# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LARA SHIPP, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>XA, INC., a Nevada Corporation, THE )<br>EXPERIENTIAL AGENCY, INC., an Illinois )<br>Corporation, JOSEPH WAGNER, MARCY )<br>MANLEY, and JEAN WILSON )<br>)<br>Defendants. ) | Case No. 06 C 1193<br>Judge Joan H. Lefkow |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Lara Shipp ("Shipp"), filed a seven-count complaint against defendants XA, Inc. ("XA"), The Experiential Agency, Inc. ("Experiential"), Joseph Wagner ("Wagner"), Marcy Manley ("Manley"), and Jean Wilson ("Wilson"), (collectively, "defendants") alleging violations of the Family and Medical Leave Act, 29 U.S.C. § 2601 ("FMLA") and the Illinois Wage Payment and Collection Act, 820 ILCS 115/1 (the "Illinois Wage Payment Act"), as well as asserting claims for breach of contract, promissory estoppel, tortious interference, and fraudulent inducement, all in connection with defendants' termination of her employment and refusal to pay her certain commissions and other forms of compensation. Defendants petition pursuant to an arbitration agreement executed between Shipp and Experiential for an order compelling Shipp to arbitrate the claims alleged in her pending Complaint and dismissing or staying the instant litigation pending completion of the arbitration proceeding. For the reasons set forth below, the petition to compel arbitration is granted.

1

## STANDARD

The central purpose of the Federal Arbitration Act ("FAA") is to "ensure that private agreements to arbitrate are enforced according to their terms." *Mastrobouno v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 53-54, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995) (citations omitted). Under the FAA, arbitration is favored "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute," *S+L+HS. p.A. v. Milller-St. Nazianz, Inc.*, 988 F.2d 1518, 1524 (7th Cir. 1993), and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Mastrobouno*, 514 US. at 62 n. 8 (quoting *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). To further this policy in favor of arbitration, § 3 of the FAA provides, in relevant part:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit or proceeding is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration ... shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

Plaintiffs bear the burden of establishing why the arbitration clause should not be enforced. *See Shearson/Am. Express v. McMahon*, 482 U.S. 220, 225-26, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987). Shipp opposes arbitration on numerous grounds. The court will address each in turn.

## ALLEGATIONS IN THE COMPLAINT

According to her Complaint, Shipp was hired by G/M Production, Inc. ("G/M"), a predecessor in interest to XA and Experiential, as a commissioned salesperson in June 2001. At that time, Shipp entered into a contract for employment with G/M setting forth the terms and conditions of her employment (the "G/M employment agreement").

In or around December 2003, Shipp learned that G/M had merged into Experiential and that she was now employed by Experiential. At the time of the merger, G/M owed Shipp thousands of dollars in commissions. Shipp spoke with several members of Experiential's management to inquire about the payment of those outstanding commissions and was assured that if she remained employed by Experiential, her commissions would be paid in full.

In or around the Spring of 2004, Shipp was presented with a new employment agreement ("the Agreement") under which Shipp was to serve as Experiential's Senior Vice President for Marketing and Public Relations. At that time, Shipp was still owed several thousand dollars in commissions. Before signing the Agreement, Shipp asked Wagner, the Chief Executive Officer of Experiential, when she would be paid those commissions. Wagner advised Shipp that Experiential would not make any further commission payments unless and until she signed the Agreement.

After making several revisions, Shipp executed the Agreement. The Agreement contains an arbitration clause which provides in relevant part:

> [A]ny dispute, controversy or claim arising out of or related to this Agreement will be submitted to binding arbitration before a single arbitrator in accordance with the National Rules for the Resolution of Employment Disputes of the American Arbitration Association in effect on the date of the demand for arbitration.

On or about April 12, 2005, Experiential provided Shipp with written notice of the termination of her employment pursuant to the Agreement. On March 6, 2006, Shipp filed her Complaint in this court.

## DISCUSSION

### A. Shipp Did Not Execute the Agreement Under Duress

Shipp first argues that the arbitration clause in the Agreement is invalid and unenforceable because she entered into it under duress. Shipp contends that Experiential refused to pay her several thousand dollars in earned commissions unless she signed the Agreement. In effect, Shipp maintains that this situation amounted to economic duress of such magnitude that it deprived her of her free will, thereby rendering the Agreement, including its arbitration provision, unenforceable.

Shipp has failed to support her allegations of duress with affidavits or other sources of proof but, rather, merely restates the allegations set forth in her complaint. "The FAA does not expressly identify the evidentiary standard a party seeking to avoid compelled arbitration must meet. But courts that have addressed the question have analogized the standard to that required of a party opposing summary judgment under Rule 56(e) of the Federal Rules of Civil Procedure: the opposing party must demonstrate that a genuine issue of material fact warranting a trial exists." *Tinder* v. *Pinkerton Security*, 305 F.3d 728, 735 (7th Cir. 2002) (citations omitted). "Just as in summary judgment proceedings, a party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration exists; the party must identify specific evidence in the record demonstrating a material factual dispute for trial. *Id.* Applying this

4

standard, Shipp's unsupported allegations are insufficient to raise a genuine issue of material fact regarding the validity of the Agreement..

Even if Shipp's allegations were accepted as true, they would be insufficient to defeat defendants' motion to compel arbitration. Under Illinois law, duress is defined as "including the imposition, oppression, undue influence or the taking of undue advantage of the business or financial stress of another, whereby his free agency is overcome." *Stavins v. Stavins*, 388 N.E.2d 928, 929, 70 Ill.App.3d 622, 26 Ill.Dec. 927 (1st Dist. 1979). For an agreement to be invalid due to duress, "a party must show that he was induced by a wrongful act or threat of another to execute an agreement under circumstances which deprived him of the exercise of his free will. *Kaplan v. Keith*, 377 N.E.2d 279, 281, 60 Ill.App.3d 804, 18 Ill.Dec. 126 (1st Dist. 1978). "Duress does not exist merely where consent to an agreement is secured because of hard bargaining positions or the pressure of financial circumstances. *Higgins v. Brunswick Corp.*, 395 N.E.2d 81, 85, 76 Ill.App.3d 273, 32 Ill.Dec. 134 (1st Dist. 1979). "In cases where agreements have been invalidated because of duress, the conduct of the party obtaining the advantage is tainted with some degree of fraud or wrongdoing. *Id.*[1]

Shipp does not allege moral wrongdoing or fraud or even that, but for Experiential's threats to withhold earned commissions and other compensation, she would not have signed the Agreement. And since Shipp aggressively negotiated the terms of the Agreement, ultimately securing a $55,000 increase in her base salary, any contention that defendants' threats robbed Shipp of her volition would be unpersuasive. At all times during the negotiation of the

---

[1] A discussion of the development of the common law of duress, with examples, may be found at Illinois *Merchants' Trust Co. v. Harvey*, 335 Ill. 284, 167 N.E. 69 (1929).

Agreement, Shipp retained the option of refusing to sign the Agreement, declining the employment, or pursuing legal action to secure payment of any earned commissions. Although between the proverbial rock and a hard place, no doubt, Experiential did not commit wrongdoing by exerting its superior bargaining strength. Accordingly, the tactics allegedly used by defendants to persuade Shipp to execute the Agreement containing an arbitration provision do not amount to duress.

### B. Shipp's Claims Are Within the Scope of the Arbitration Provision

Shipp's primary argument in opposition to arbitration is that the arbitration clause in the Agreement, which applies to "any dispute, controversy or claim arising out of or related to" the Agreement, is not broad enough to cover her claims.

Arbitration provisions utilizing the "arising from," "arising out of," or "relating to" language have been described as "extremely broad and capable of extensive reach." *Kiefer Specialty Flooring, Inc.* v. *Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir. 1999). *See also Sweet Dreams Unlimited, Inc.* v. *Dial-A-Mattress, International, Ltd.*, 1 F.3d 639, 643 (7th Cir. 1993) (holding that the "arising out of" language reaches all disputes having their origin or genesis in the contract). Broad arbitration clauses, such as the one present in this case, create a presumption of arbitrability. *See Id.*

Notably Shipp does not contend that FMLA claims are per se inarbitrable.[2] Instead, Shipp merely argues that her claims do not "arise out of" or "relate to" the Agreement. In her

---

[2] Such an argument would be unavailing. *See Mandel* v. *SCI Illinois Services, Inc.*, 2003 WL 21801016 (N.D. Ill. Aug. 1, 2003) (compelling arbitration of FMLA claim). *See also O'Neil* v. *Hilton Head Hosp.*, 115 F.3d 272, 274 (4th Cir. 1997) (finding that nothing in the FMLA suggests that Congress intended for disputes arising under it to be exempt from the FAA).

complaint, Shipp alleges that after she took FMLA leave following the birth of her child, defendants 1) changed the terms of her FMLA leave by running her paid time off (PTO) leave concurrently with her FMLA leave; 2) ordered her to attend a meeting; 3) terminated her employment; and 4) refused to return her to her position upon the end of her FMLA leave. Paragraph 3(e) of the Agreement provides,

> "Executive will be entitled to thirty (30) days of paid time off (PTO) per year. PTO days shall begin on the 1st of January for each successive year. Unused PTO days shall expire on December 31 of each year and shall not roll-over into the next year. Other than the use of PTO days for illness or personal emergencies, PTO days must be pre-approved by Company."

The Agreement thus provided for and set the terms of Shipp's PTO. As a consequence, Shipp's FMLA claims directly implicate the Agreement. *See Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 846 (2d Cir. 1987) ("If these factual allegations 'touch matters' covered by the parties' contract, then those claims must be arbitrated, whatever the legal labels attached to them."). Indeed, it would be virtually impossible for Shipp to allege a factual basis for her FMLA claim without invoking the Agreement and the circumstances surrounding its execution. Thus, Shipp's FMLA claim is arbitrable.

Similarly, Shipp's Illinois Wage Payment Act claim "arises out of" and "relates to" the Agreement because the principal subject of that claim, the payment of commissions, is governed by the Agreement. Shipp contends that the subject commission payments relate solely to the GM employment agreement. That contention, however, is belied by the allegations of her complaint, which indicate that Shipp seeks recovery of commissions on "recurring business." While such business may have been procured under the terms of the GM employment agreement, beginning

7

in Spring 2004, following the execution of the Agreement, the payment of commissions for that business was governed by the Agreement alone. Since Shipp seeks recovery of commissions that post-date the execution of the Agreement, her Illinois Wage Payment Act claim is arbitrable.[3] Even if the commissions pre-dated execution of the Agreement, Shipp's Count II would still be arbitrable because Shipp alleges that those commissions were central to the parties' negotiation of the Agreement. Shipp cannot establish her entitlement to those commissions without reference to the Agreement.

Shipp's claim for declaratory relief regarding her right to equity in XA directly implicates paragraph 3(g) of the Agreement, which addresses her entitlement to participation in Experiential's stock option plan. While Shipp maintains that her claim relates to various extra-contractual promises made by Experiential management, any consideration of those alleged promises would be inextricably intertwined with a review of the terms of the Agreement. Accordingly, Shipp's Count III is arbitrable.

Shipp's claim for breach of contract is arbitrable because it asserts a claim for breach of the Agreement itself. Shipp's assertion in her brief that her Count IV alleges only a breach of the G/M employment agreement is directly contradicted by paragraph 99 of her Complaint, which expressly asserts that "XA and Experiential have breached the terms of the Experiential

---

[3]Even if the commission payments did not "arise out of" or "relate to" the Agreement, Shipp's Illinois Wage Payment Act claim would still be arbitrable. Shipp's Count II also seeks to recover "other items of compensation including but not limited [*sic*] $28,750 for the loss she incurred in connection with the disposition of her company car, and the value of the equity that was promised but denied to her." These other items of compensation relate solely to the Agreement.

Contract...." As such, Shipp's count IV is arbitrable.[4]

Shipp's promissory estoppel claim is arbitrable because it asserts that Shipp was injured by promises made by defendants in the Agreement and elsewhere to pay her commissions earned under the G/M employment agreement. Resolution of this claim, thus, relates directly to the Agreement.

Shipp's tortious interference claim against Wagner alleges interference with the Agreement itself. Obviously, then, Shipp's count V "arises out of" and "relates to" the Agreement. Shipp contends, however, that Wagner cannot assert the arbitration provision of the Agreement because he was not a signatory to that contract. Shipp's contention is not supported by Seventh Circuit precedent. A signatory to a contract containing an arbitration clause is estopped from maintaining that an arbitration clause does not apply to its claim against a non-signatory when the agreement at issue forms the basis of the claim. *See Zurich American Ins. Co. v. Watts Industries, Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). In this case, Shipp's claim is rooted in and dependent on rights and conditions defined in the Agreement. As a result, Shipp's count VI is arbitrable.

Finally, Shipp's claim for fraudulent inducement is arbitrable because it is based on disputes regarding commissions, equity, and leave benefits, all of which are addressed by the Agreement. While Shipp claims entitlement to this compensation based on extra-contractual promises, determination of the enforceability of those alleged promises would require reference

---

[4]Even if the court adopted Shipp's restrictive reading of her Complaint, her Count IV would still be arbitrable. The Agreement modified the parties' rights and obligations under the G/M employment agreement. Thus, any claim arising out of or relating to the G/M employment agreement would necessarily require consideration of the Agreement.

9

to the Agreement. As such, Shipp's count VII "arises out of" and "relates to" the Agreement.

## C. Arbitration Is Not Too Expensive

Shipp next opposes arbitration by arguing that it would be prohibitively expensive, effectively preventing her from vindicating her statutory rights.

An arbitration agreement may be unenforceable if a party would "be saddled with prohibitive [arbitration] costs." *Green Tree Financial Corp. Alabama v. Randolph*, 531 U.S. 79, 90-92, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000). The party seeking to invalidate an arbitration agreement on the grounds that arbitration would be prohibitively expensive bears the burden of showing the likelihood of incurring such costs. *Id.* at 92. Specifically, the party objecting to arbitration on this ground "must provide some individualized evidence that it likely will face prohibitive costs in the arbitration at issue and that it is financially incapable of meeting those costs." *Livingston v. Associates Finance, Inc.*, 339 F.3d 553, 557 (7th Cir. 2003).

Shipp claims that arbitration is prohibitively expensive because under the AAA rules for Individually-Negotiated Employment Agreements (the "AAA Rules"), she would be required to pay an initial filing fee of $4,250, a case service fee of $1,750, and her share of the arbitrators' daily fees. In addition, Shipp contends that arbitration would impose a severe financial burden because the Agreement provides that the losing party in the arbitration is responsible for the prevailing party's costs and attorneys' fees.

Shipp's attorneys' fees argument is based on a misunderstanding of the scope of the fee-shifting provision in the Agreement. The fee-shifting provision provides:

In the event of a lawsuit, arbitration, or other dispute-resolution proceeding between the

10

> Company and Executive arising out of or relates to this Agreement, the prevailing party, in the proceeding as a whole and/or in any interim or ancillary proceedings (e.g., opposed motions, including without limitation motions for preliminary or temporary injunctive relief) will be entitled to recover its reasonable attorneys' fees and expenses unless the court or other forum determines that such a recovery would serve the interests of judgment.

The attorneys' fees provision thus applies to claims that are litigated as well as arbitrated. As such, Shipp is no less at risk of being responsible for defendants' attorneys' fees if permitted to litigate her claims. Accordingly, the fee-shifting provision does not impose on Shipp a measurably greater cost for arbitrating her claims than for litigating them. *See James* v. *McDonald's Corp.*, 417 F.3d 672, 680 (7th 2005) ("The cost differential between arbitration and litigation is evidence highly probative to [plaintiff's] claim that requiring her to proceed through arbitration, rather than through the courts, will effectively deny her legal recourse.")

Shipp's contention that the AAA rules make arbitration prohibitively expensive is also unpersuasive. As defendants point out, the case service fee of $1,750 is due and payable only if the case proceeds to hearing, and the arbitrators' daily fees are subject to allocation by the arbitrator in the award. Thus, contrary to Shipp's assertion, her only certain arbitration fee is her initial filing fee of $4,250. Although not pocket change, Shipp's declaration represents that she earns $78,000 per year, which suggests that Shipp has the financial wherewithal to arbitrate her claims. Moreover, Shipp's declaration does not disclose whether she has other financial resources, or reveal her financial obligations to permit a useful assessment of her financial position. Although she declares that her husband is unemployed and that she has "significant child care expenses," she fails to present any evidence to corroborate those claims or to quantify her expenses. In short, Shipp fails to demonstrate the kind of financial distress necessary to deny

arbitration. *See, e.g., Phillips* v. *Associates Home Equity Services, Inc.*, 179 F.Supp.2d 840, 846 (N.D. Ill. 2001) (accepting plaintiff's averment that she was in "severe financial straits" because defendant only provided its home equity loan, the subject of plaintiff's complaint, to those in the "subprime market," those considered to be poor credit risks, that defendant targeted with its financial products). *See also Spinetti* v. *Service Corp. Intern*, 240 F.Supp.2d 350, 355 (W.D. Pa. 2001) (finding arbitration prohibitively expensive where plaintiff went unemployed for six months following his termination by defendant, ultimately accepted a position paying approximately $1,000 per month, and had monthly living expenses of approximately $2,000).

Even if the court accepts Shipp's assessment of the potential costs involved in arbitration, she nevertheless fails to present evidence sufficient to establish that the potential $10,000 in additional costs associated with arbitration would effectively preclude her from pursuing her claims. Shipp has already demonstrated a willingness and ability to bear considerable expense to pursue her claims: she has retained two attorneys, paid the filing fee, and assumed the risk that if she loses the litigation, she will be responsible for defendants' attorneys fees and costs. In light of Shipp's apparent solid financial condition, her conclusional assertion that the additional costs associated with arbitration would gravely undermine her ability to pursue her claims is insufficient to demonstrate that arbitration would be prohibitively expensive in this case.

### D. The Arbitration Clause Survived Termination of the Agreement

Shipp argues that the arbitration provision is inapposite because defendants terminated the Agreement when they terminated her employment. Shipp's argument fails, however, because the arbitration clause in the Agreement is broad enough to encompass post-termination claims

related to her employment and the termination of her employment. In *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.*, 1 F.3d 639, 642 (7th Cir. 1993), the Seventh Circuit ruled that an arbitration provision virtually identical to the one as issue in this case "evince[d] an intent to commit to arbitration any dispute connected with the contract irrespective of when it occurs."

Shipp attempts to distinguish *Sweet Dreams* by arguing that here the parties manifested an intent to exclude from arbitrability contract disputes arising after termination since the Agreement expressly provides that certain other provisions survive termination of the Agreement. By specifically providing that certain provisions of the Agreement survive its termination, according to Shipp, "under the doctrine of *expressio unius exclusio alterius* - 'the expression in expression in a contract of one or more things of a class implies the exclusion of all not expressed,' *In re Marriage of Yaxley*, 259 Ill.App.3d 544, 548, 631 N.E.2d 252, 255 (4th Dist. 1994) - those provisions that were not expressly listed do not survive."

Under the federal common law of arbitrability, an arbitration provision in a contract is held to survive the termination of that contract unless there is clear evidence that the parties intended to override this presumption. *See Nolde Bros., Inc. v. Local No. 358, Bakery and Confectionery Workers Union*, 430 U.S. 243, 255, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977) ("where the disputes is over a provision of the expired agreement, the presumptions favoring arbitrability must be negated expressly or by clear implication.") This presumption in favor of arbitrabilty can be rebutted if the parties express or clearly imply an intent to repudiate arbitrability. *Sweet Dreams Unlimited, Inc.*, 1 F.3d at 642. In this case, the Agreement has no express language regarding the survivability of the arbitration provision, but the arbitration provision uses broad phrases such as "any dispute" and "arising out of" or "relate to," all of which evince an intent to

submit post-termination claims to arbitration. Because the parties could have reasonably concluded that expressly providing for the arbitrability of post-termination claims was unnecessary, particularly where employment contracts are often, perhaps typically, litigated after the relationship has been severed. For the same reason, it is reasonable to expect that if the parties had intended to extinguish the arbitration provision upon the termination of the Agreement they would have done so explicitly. Thus, since any doubts concerning the scope of the arbitration clause must be resolved in favor of arbitration, *Moses H. Cone Memorial Hospital*, 460 U.S. at 24-25, the conclusion must be that the arbitration provision survived the termination of the Agreement.

### E.     Shipp's Complaint Should Be Dismissed

The final issue is whether the appropriate disposition of this matter is to dismiss Shipp's Complaint or stay the proceeding in accordance with 9 U.S.C. § 3. Because all of Shipp's claims are subject to arbitration, retaining jurisdiction and staying the action will serve no purpose. Accordingly, rather than stay the proceedings pending arbitration, Shipp's Complaint is dismissed without prejudice to Shipp reinstating the case, if necessary, after the arbitration proceeding has been completed. *See Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) ("The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration."). *See also Dalope v. United Health Care of Illinois*, 2004 WL 2325688, at * 2 (N.D. Ill. Oct. 8, 2004) (dismissing complaint without prejudice because all issues raised in the action were subject to arbitration).

## CONCLUSION

For the foregoing reasons, defendants motion to compel arbitration [#10] is granted. Shipp's Complaint is dismissed without prejudice. The parties are ordered to proceed to arbitration in accordance with the terms of the Agreement.

Date: August 31, 2006                    ENTER: _____
                                         JOAN HUMPHREY LEFKOW
                                         United States District Judge